1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL C. SHORT,

                    Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                 Defendant.

NO.  C13-2183-MJP-JPD

REPORT AND
RECOMMENDATION

Plaintiff Paul C. Short appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied his application for Child's Insurance

Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before

an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends

that the Commissioner's decision be reversed and remanded for an award and calculation of

benefits.

I.       FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 41 year old man with less than

a high school education.  Administrative Record ("AR") at 52-53.  His past work experience

includes employment for family members doing maintenance and landscaping at a shopping

center.  AR at 218, 322, 346, 393, 493.  Plaintiff last worked in 1996.  AR at 207.  The record

REPORT AND RECOMMENDATION - 1

reflects that plaintiff has received Supplemental Security Income ("SSI") benefits due to schizophrenia since approximately 2006.  AR at 54-56, 90, 96, 206.

On November 29, 2010, and December 1, 2010, plaintiff filed applications for child's insurance benefits, alleging disability beginning in 1970.  AR at 189-200.  Plaintiff later amended his alleged disability onset date to January 1, 1991.  AR at 49.  Plaintiff was 20 years old on this date.  Pursuant to section 202(d) of the Social Security Act, to be entitled to child's insurance benefits, plaintiff must have a disability that began before attainment of age of 22.  Plaintiff asserts he is disabled due to schizophrenia.  AR at 219.

The Commissioner denied plaintiff's claims initially and on reconsideration.  AR at 101-06.  Plaintiff's requested hearing took place on April 5, 2010.   AR at 42-60.  On April 26, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding at step two of the sequential disability evaluation process that plaintiff did not have an impairment or combination of impairments that significantly limited plaintiff's ability to perform basis work related activities for 12 consecutive months prior to plaintiff's attainment of age 22.  AR at 27-41.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-12, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On December 6, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

REPORT AND RECOMMENDATION - 2

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Short bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

1    any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

2    expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §

3    423(d)(1)(A).  A claimant is disabled under the Act only if his impairments are of such severity

4    that he is unable to do his previous work, and cannot, considering his age, education, and work

5    experience, engage in any other substantial gainful activity existing in the national economy.

6    42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

7            The Commissioner has established a five step sequential evaluation process for

8    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §

9    404.1520.  The claimant bears the burden of proof during steps one through four.  At step five,

10   the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in

11   the sequence, the inquiry ends without the need to consider subsequent steps.

12           Step one asks whether the claimant is presently engaged in "substantial gainful

13   activity."  20 C.F.R. § 404.1520(b).[1]  If he is, disability benefits are denied.  If he is not, the

14   Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

15   or more medically severe impairments, or combination of impairments, that limit his physical

16   or mental ability to do basic work activities.  If the claimant does not have such impairments,

17   he is not disabled.  20 C.F.R. § 404.1520(c).  If the claimant does have a severe impairment,

18   the Commissioner moves to step three to determine whether the impairment meets or equals

19   any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d).  A

20   claimant whose impairment meets or equals one of the listings for the required twelve-month

21   duration requirement is disabled.  *Id.*

22   _____

23           [1] Substantial gainful activity is work activity that is both substantial, i.e., involves
     significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
24   404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. § 404.1520(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On April 26, 2012, the ALJ issued a decision finding the following:

1.    Born on XXXXXX, 1970, [2] the claimant had not attained age 22 as of January 1, 1991, the amended alleged onset date.

2.    The claimant has not engaged in substantial gainful activity since January 1, 1991, the amended alleged onset date.

3.    Prior to attaining age 22, the claimant had the following medically determinable impairment: possible schizophrenia.

4.    Prior to attaining age 22, the claimant did not have an impairment or combination of impairments that had significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

5.    The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to XXXXXX, 1992, [3] the date he attained age 22.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.
[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

AR at 32-36.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Whether the ALJ erred when he failed to give clear and convincing reasons for giving "little weight" to the medical opinion of Plaintiff's treating psychiatrist, Dr. Henry S. Levine, M.D., regarding Plaintiff's shizophrenia, and Dr. Levine's opinion should be accepted as true.

2.    Whether the ALJ erred when he failed to find that Plaintiff had a medically determinable impairment of schizophrenia prior to the age of 22, and that his condition meets the criteria of Listing 12.03.

3.    Whether the ALJ erred by not providing clear and convincing reasons for giving the lay statements from Plaintiff's father, Christopher Short, and Plaintiff's grandfather, Clare Short, little to no weight regarding Plaintiff's functional limitations.

4.    Whether the Court should award benefits to Plaintiff.

Dkt. No. 12 at 1-2.

## VII.    DISCUSSION

A.    <u>The ALJ's Assessment of the Medical Opinion of Treating Psychiatrist Henry S. Levine, MD</u>

Plaintiff argues the ALJ erred by failing to give clear and convincing reasons to reject the uncontroverted medical opinion of plaintiff's treating psychiatrist Henry S. Levine, MD. Dkt. 12 at 6-10.  As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.

1    If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give

2    clear and convincing reasons for doing so if the opinion is not contradicted by other evidence,

3    and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

4    1988). "This can be done by setting out a detailed and thorough summary of the facts and

5    conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

6    (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her

7    conclusions. "He must set forth his own interpretations and explain why they, rather than the

8    doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

9    Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at

10   725.

11   The opinions of examining physicians are to be given more weight than non-examining

12   physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the

13   uncontradicted opinions of examining physicians may not be rejected without clear and

14   convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

15   physician only by providing specific and legitimate reasons that are supported by the record.

16   *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

17   Opinions from non-examining medical sources are to be given less weight than treating

18   or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

19   opinions from such sources and may not simply ignore them. In other words, an ALJ must

20   evaluate the opinion of a non-examining source and explain the weight given to it. Social

21   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

22   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

23   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

24

1   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

2   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

3          Here, plaintiff initiated treatment with Dr. Levine in 2008, approximately 17 years after

4   the alleged disability onset date.  AR at 387-449.  Dr. Levine is board certified in psychiatry

5   and forensic psychiatry, which is a medical sub-specialty in the application of psychiatry to

6   legal issues.  *See* AR at 441.  Notably, more deference generally is given to the opinion of a

7   specialist about medical issues related to the doctor's area of specialty.  *See Benecke v.*

8   *Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)).

9          In May 2009, and March 2012, Dr. Levine wrote medical source statements

10  documenting plaintiff's diagnosis of schizophrenia and providing an opinion regarding the

11  onset and severity of plaintiff's mental impairment.  AR at 385-86, 438-53.  Dr. Levine

12  concluded that plaintiff, "since his late adolescence, has had a very severe form of

13  schizophrenia that has disabled him from gainful employment during that entire time."  AR at

14  440.

15         In forming this opinion, Dr. Levine "gathered historical information from [plaintiff],

16  from [plaintiff's] father, from [plaintiff's] medical record, from the staff at [plaintiff's assisted

17  living facility], from [plaintiff's] guardian [], and from one of [plaintiff's] grandparents, who

18  raised him during his late adolescence."  AR at 439.   Based on the results of this investigation,

19  Dr. Levine opined plaintiff's schizophrenia began to manifest around the time plaintiff quit

20  high school at age 18 or 19 years old.  AR at 439.  Dr. Levin wrote:

21              It is my impression that [plaintiff], since late adolescence, has had a very severe
             form of schizophrenia that has disabled him from gainful employment during
22           that entire time.  Disabling factors, which has been present since then, include
             his inability to display affect, to follow more than the simplest directions, to
23           remember events well, to maintain eye contact and a pleasant appearance
             around others, and to manage activities of daily living outside a very structures
24           and supportive environment.  He manifests a complete inability to relate to

REPORT AND RECOMMENDATION - 8

others except on the most superficial level.  He is consistently distracted by auditory hallucinations.  His motivation to alter his life circumstances is completely undercut by his illness.  He has little interest and insight, and avoids meaningful interactions with others whenever possible. When that has not been possible, … his relationships have been featured by conflict.  I do not think [plaintiff] knows how to relate to other people.

AR at 440.

Dr. Levine also completed a Psychiatric Review Technique Form, which indicates plaintiff's schizophrenia meets the severity of Listing 12.03 for schizophrenic, paranoid and other psychotic disorders.  *See* AR at 450 – 53; 20 C.F.R. pt. 404, subpt. P, app. 1. § 12.03. Consistent with listing level impairment, Dr. Levine opined plaintiff experienced delusions or hallucinations; incoherence, loosening of associations, illogical thinking, or poverty of content of speech associated with blunt affect and flat affect; and emotional withdrawal and/or isolation.  AR at 451.  Dr. Levine wrote: "[plaintiff] experiences persistent auditory hallucination.  He consistently exhibits extreme poverty of speech, and his is virtually affect-less.  He does not socialize, has no friends, and prefers an isolated existence, though he cannot meet his daily needs without help from others." AR at 451.  Dr. Levine further opined plaintiff has had marked restriction in activities of daily living, extreme difficulties maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace.  AR at 452.  These findings also are consistent with disability under listing 12.03.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1. § 12.03.

The ALJ rejected Dr. Levin's opinion because it "is purely speculative," offered retroactively, and not based on any medical evidence from the time period at issue in this claim.  AR at 35.  The ALJ further reasoned that Dr. Levine's opinion is undercut by plaintiff's work at substantial gainful levels at age 19.  AR at 35.  The Commissioner lists other reasons to reject Dr. Levine's decision.  However, according to the Ninth Circuit, "[l]ong-standing

1   principles of administrative law require us to review the ALJ's decision based on the reasoning

2   and actual findings offered by the ALJ - - not post hoc rationalizations that attempt to intuit

3   what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d

4   1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other

5   citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may

6   not uphold an agency's decision on a ground not actually relied on by the agency") (citing

7   *Chenery Corp*, 332 U.S. at 196).  Although defendant asserts that Dr. Levine's opinion is also

8   inconsistent with other evidence in the record, *see* Dkt. 14 at 6, this reason was not among the

9   rationale offered by the ALJ to reject Dr. Levine's opinion.  *See* AR at 34-35.

10          As a threshold matter, this Court agrees with plaintiff that the ALJ was required to give

11  clear and convincing reasons supported by substantial evidence to reject the opinion in Dr.

12  Levine.  *See Reddick*, 157 F.3d at 725.  Defendant argues Dr. Levine's opinion was

13  contradicted by the opinion of state agency reviewing physician Eugene Kester, MD.

14  However, Dr. Kester reviewed the medical evidence of record in April 2011, and for this

15  reason, did not have the opportunity to review much of the most significant and probative

16  evidence in this case, including the 2012 forensic evaluation completed by Dr. Levine and the

17  billing records indicating plaintiff was diagnosed with schizophrenia as early as 1991.  *See* AR

18  45-46, 51-52, 93, 94, 98, 100, 438-40, 450-55.  Additionally, it does not appear that Dr. Kester

19  had access to the medical history drafted by plaintiff's grandfather in 1997, which described

20  plaintiff's course of treatment from 1991 to 1997, and gave some insight into plaintiff's

21  functioning during this period.  *See* AR at 90-91 (listing evidence of record reviewed prior to

22  reconsideration denial), 279-81 (statement of plaintiff's grandfather).

23          Based on the records available at that time of his 2011 record review, Dr. Kester opined

24  plaintiff did not have a medically determinable mental impairment prior to age 22.  AR at 93-

REPORT AND RECOMMENDATION - 10

94, 99-100.  For this reason, Dr. Kester offered no opinion regarding the severity of plaintiff's symptoms and limitations.  AR at 93-94, 99-100.  It is particularly notable that the ALJ, contrary to Dr. Kester's 2011 opinion, found plaintiff's "possible schizophrenia" was a medically determinable impairment prior to plaintiff's 22nd birthday.  AR at 32-33 (finding possible schizophrenia to be a medically determinable impairment based on, in part, on the billing statements from March and May 1991).  For these reasons, Dr. Kester's opinion, although different, does not meaningfully contradict Dr. Levine's opinion, and as such, clear and convincing reasons supported by substantial evidence are needed to reject this evidence. *See Reddick*, 157 F.3d at 725.

With regard to the reasons offered by the ALJ to reject Dr. Levine's medical opinion, this Court finds the ALJ failed to offer clear and convincing reasons supported by substantial evidence to reject this evidence.  *See Reddick*, 157 F.3d at 725.  The ALJ essentially offers two reasons to reject Dr. Levine's opinion: the first reason is that the opinion is provided retroactively, and the second reason is that Dr. Levine's opinion is undercut by plaintiff's work at substantial gainful levels until the age of 19.  *See* AR at 35.

With regard to Dr. Levine's retroactive diagnosis, the Ninth Circuit has held it is possible for a claimant to establish "continuous disabling severity by means of a retrospective diagnosis."  *See Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1461 (9th Cir. 1995). Moreover, medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period.  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975).  Because such reports "are inevitably rendered retrospectively," they "should not be disregarded solely on that basis."  *Smith*, 849 F.2d at 1225 (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)).

1  For these reasons, it would be legally insufficient for the ALJ to reject Dr. Levine's opinion

2  solely because it was offered retroactively.

3      Additionally, SSR 83-20 provides in relevant part:

4      In some cases, it may be possible, based on the medical evidence to reasonably
       infer that the onset of a disabling impairment(s) occurred some time prior to the
5      date of the first recorded medical examination, e.g., the date the claimant
       stopped working. How long the disease may be determined to have existed at a
6      disabling level of severity depends on an informed judgment of the facts in the
       particular case. This judgment, however, must have a legitimate medical
7      basis…

8      If reasonable inferences about the progression of the impairment cannot be
       made on the basis of the evidence in file and additional relevant medical
9      evidence is not available, it may be necessary to explore other sources of
       documentation.  Information may be obtained from family members, friends
10     and former employers to… furnish additional evidence regarding the course of
       the individual's condition… The impact of lay evidence on the decision of onset
11     will be limited to the degree it is not contrary to the medical evidence of
       record."
12

13  SSR 83-20, 1983 WL 31249*3.  In this case, the medical and lay witness evidence, although

14  limited, is consistent regarding the onset and progression of plaintiff's schizophrenia.  This

15  evidence is also consistent with plaintiff's earnings history.

16      For example, the evidence regarding plaintiff's work history is consistent with Dr.

17  Levine's opinion that plaintiff's schizophrenia began to manifest around the time plaintiff quit

18  high school at age 18 or 19, and was disabling by late adolescence.  *See* AR at 439; *accord* AR

19  at 56-57 (noting plaintiff left home at age 19 after becoming "intractable" and refusing to go to

20  school or look for work; also noting trouble communicating with plaintiff during that time),

21  281 (noting plaintiff was severely depressed and in need of medical attention at age 20 when

22  he went to live with his grandparents), 454-55 (billing records for psychotherapy at age 20

23  signed by a medical doctor and indicating a diagnosis of schizophrenia).

24

REPORT AND RECOMMENDATION - 12

1          The evidence also shows plaintiff stopped working at substantial gainful levels in 1991,

2    at age 20, due to his mental impairment.   *See* AR at 32, 439.  Although plaintiff performed

3    some work after this time, this work was not performed at substantial gainful levels.  *See* AR at

4    32, 207, 209.  Additionally, plaintiff's work after the alleged disability onset date was done for

5    family members, including plaintiff's grandfather and uncle.   *See* AR at 53 (self employment

6    in 1995-1996 consisted of "some sort of partnership" with grandfather where uncle attempted

7    to supervise plaintiff's daily activities "in the form of this employment, and it didn't work very

8    well..."), 209 (characterizing employment in 1995 and 1996 as "self employment"), 281

9    (working as a landscaper in 1995-1996), 322 (only worked as a landscaper), 346 (only worked

10   as a landscaper), 393 ("worked for relatives in California, mostly doing maintenance work at a

11   shopping center."); *see also* 439 ("At first, [plaintiff] worked for family members doing

12   maintenance at a shopping center.  However, when he became floridly psychotic, even his

13   family found it necessary to dismiss him from employment… It is my understanding that since

14   late adolescence, with the exception of a few menial jobs he performed for other family

15   members, he has been unable to maintain gainful employment.").

16         As such, contrary to the ALJ rejection of this evidence, Dr. Levine's opinion that

17   plaintiff's schizophrenia began to manifest at age 18 or 19 and became disabling in late

18   adolescence, is supported by substantial evidence in the record including the lay witness

19   statements of plaintiff's father and grandfather, plaintiff's earnings history, and the medical

20   bills confirming that plaintiff was diagnosed with schizophrenia as early as 1991.  For these

21   reasons, the ALJ's rejection of Dr. Levine's opinion because it was made after the period at

22   issue in this claim is not a clear and convincing reason supported by substantial evidence.  *See*

23   *Reddick*, 157 F.3d at 725.

24

REPORT AND RECOMMENDATION - 13

1    The second reason offered by the ALJ, that Dr. Levine's opinion is undermined by

2    plaintiff's work at substantial gainful levels at age 19 and 20, also is not a clear and convincing

3    reason supported by substantial evidence. *See Reddick*, 157 F.3d at 725.  Dr. Levine opined

4    plaintiff's schizophrenic symptoms "became manifest" at 18 or 19, AR at 439, and that the

5    severity of plaintiff's schizophrenia met the severity of listing 12.03 by late adolescence. *See*

6    AR at 385 (noting plaintiff has been "disabled from work due to mental illness since age 19"),

7    440 (noting that plaintiff "since late adolescence, has had a very severe form of schizophrenia

8    that has disabled him from gainful employment during that entire time), 450-53 (indicating

9    plaintiff met the A, B and C criteria for listing 12.03).  In reaching this conclusion, Dr. Levine

10   relied on his own clinical observations of plaintiff, statements from plaintiff and others, and

11   plaintiff's medical records.  AR at 439.  Dr. Levine did not, however, indicate that he was able

12   to review plaintiff's earnings history.  AR at 439.  Nonetheless, Dr. Levine's opinions

13   regarding the onset and progression of plaintiff's symptoms and limitations are consistent with

14   plaintiff's earnings history, which lends further credibility to Dr. Levine's opinion.

15          As noted by the ALJ, plaintiff worked at substantial gainful levels at age 19 or 20, prior

16   to his January 1, 1991, amended onset date.  AR at 32.  Although the exact date that plaintiff

17   stopped working at this level is not clear from the record, the record is clear that plaintiff did

18   not work at substantial gainful levels after age 20.  AR at 32, 207.  Additionally, the lay

19   witness statement from plaintiff's grandfather indicates plaintiff experienced a psychotic

20   episode that culminated in February of 1991, and lead to plaintiff moving in with his

21   grandparents, seeking medical attention for his symptoms and not working again until 1993.

22   *See* AR at 281; *see also* 207 (earnings summary).

23          From this evidence, one can infer that plaintiff stopped working at substantial gainful

24   levels, prior to plaintiff's psychotic episode, which culminated in February 1991.  *See* SSR 83-

REPORT AND RECOMMENDATION - 14

20, 1983 WL 31249*3 ("In some cases, it may be possible, based on the medical evidence to

reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the

date of the first recorded medical examination, *e.g., the date the claimant stopped

working*.")(emphasis added).  This conclusion is consistent with Dr. Levine's opinion that

plaintiff's schizophrenia became disabling in late adolescence.  It is also consistent with

plaintiff's amended disability onset date of January 1, 1991.

Dr. Levine's opinion regarding plaintiff's symptoms and limitations is not, therefore,

undermined by plaintiff's earnings history.  As such, the ALJ's reasons for rejecting this

evidence are legally insufficient.  This Court recommends that the ALJ's rejection of Dr.

Levine's medical opinion be reversed.

B.    The ALJ's Assessment of the Lay Witness Testimony of Plaintiff's Father and Grandfather

Plaintiff also argues the ALJ failed to give clear and convincing reasons to reject the

testimony of plaintiff's father and grandfather.  Dkt. 12 at 13-14.  In order to determine whether

a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse

practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as

spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a

claimant's symptoms or how an impairment affects his/her ability to work is competent

evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19

(9th Cir. 1993).  If an ALJ chooses to discount testimony of a lay witness, he must provide

"reasons that are germane to each witness," and may not simply categorically discredit the

testimony.  *Dodrill,* 12 F.3d at 919.

As defendant points out, the ALJ is required to offer only germane reasons to reject the

testimony of lay witnesses.  *Id*.  Here, the ALJ rejected the testimony of plaintiff's father that

REPORT AND RECOMMENDATION - 15

1   plaintiff became very difficult to deal with at age 19, because plaintiff's father had no knowledge

2   of plaintiff's day-to-day functioning during the relevant period in this case (from January 1991,

3   when plaintiff was 20 years old, to plaintiff's 22 birthday in 1992). AR at 35. This, however, is

4   not a germane reason to reject plaintiff's father's statements regarding plaintiff's functioning at

5   age 19. *See Dodrill,* 12 F.3d at 919. Although plaintiff's father had no contact with plaintiff

6   during the relevant period, plaintiff's father was in a position to provide testimony regarding

7   plaintiff's behavior at age 19, when plaintiff resided in the father's home. *See* AR at 56

8   (testifying that plaintiff left "my household at about the age… of 19… He'd become very

9   difficult to deal with and intractable, and he refused to go to school, and he refused to look for

10  work, and … with hindsight… [plaintiff's schizophrenia] … goes all the way back to birth…")

11  Although this testimony relates to a time shortly prior to the relevant period in this claim, it is

12  relevant evidence because it provides important information regarding the onset of plaintiff's

13  mental impairment. Also, this evidence is consistent with Dr. Levine's opinion that plaintiff's

14  schizophrenic symptoms became manifest at age 18 or 19 and with plaintiff's earnings history

15  that demonstrates the ability to work at substantial levels at the age of 19 or 20. *See* AR at 207,

16  439. For these reasons, this Court finds that the ALJ erred by rejecting the testimony of

17  plaintiff's father.

18          The ALJ also rejected the statements of plaintiff's grandfather that plaintiff was severely

19  depressed and in need of medical treatment in February 1991. AR at 281. Plaintiff's grandfather

20  also stated plaintiff was diagnosed with schizophrenia and initiated medication management and

21  therapy shortly after this time. AR at 281. Plaintiff's grandfather further noted that, in 1994,

22  plaintiff made good progress with a particular therapist and terminated therapy. AR at 281. He

23  then stated plaintiff's functioning declined in 1995 and 1996. AR at 281. The ALJ rejected the

24  testimony of plaintiff's grandfather because it "does not give any further illumination to

REPORT AND RECOMMENDATION - 16

1   [plaintiff's] alleged limitations from schizophrenia prior to" plaintiff's 22nd birthday.  AR at 36.

2   This is not, however, a germane reason to reject the testimony of this witness.  *See Dodrill,* 12

3   F.3d at 919.

4           The statement prepared by plaintiff's grandfather that appears in the record was written in

5   1997.  AR at 280-81.  Plaintiff first applied for SSI benefits in 2006 and initiated this claim for

6   child's insurance benefits in 2010.  AR at 54-56, 90, 96, 189-200, 206.  Given this chronology,

7   the letter drafted by plaintiff's grandfather, referred to by the grandfather as a "Medical History,"

8   was not generated for the purpose of providing evidence of plaintiff's functional limitations for

9   disability benefits.  *See* AR at 280.  This fact, however, does not diminish the reliability of these

10  statements or provide a germane basis for its rejection.

11          Moreover, plaintiff's grandfather's testimony regarding plaintiff's functioning from age

12  20 to 26 is consistent with other evidence in the record, including the billing records discussed

13  previously and plaintiff's earnings history that indicates plaintiff did not work at all in 1991 or

14  1992, but was able to perform some work, albeit at declining levels, from 1993 to 1996.  *See* AR

15  32 (noting that the average of plaintiff's total yearly earnings for 1993 through 1996 was under

16  the amounts required for substantial gainful activity), 207 (indicating plaintiff earned $5,396.15

17  in 1993, $5,371.57 in 1994, $1,345.00 in 1995, and $785.00 in 1996).  The grandfather's

18  testimony is also consistent with billing records, which indicate plaintiff was diagnosed with

19  schizophrenia as early as March 1991.  AR at 455.

20          Although lacking in specific functional limitations, the chronology of plaintiff's illness

21  provided by plaintiff's grandfather is relevant because it provides information regarding the

22  onset and progress of plaintiff's schizophrenia.  Moreover, it is consistent with plaintiff's father's

23  statements that plaintiff began demonstrating significant behavioral difficulties around age 19,

24  consistent with billing records that indicate plaintiff was diagnosed with schizophrenia in 1991,

1   and consistent with Dr. Levine's opinion that plaintiff's schizophrenic symptoms manifested and

2   became disabling by late adolescence.  AR at 56, 438-40, 450-55.

3          As the ALJ points out, the grandfather's statements regarding plaintiff's work and

4   functioning suggest plaintiff had some ability to function while he was residing in his

5   grandparent's home.  AR at 35.  This observation, however, is not inconsistent with a finding of

6   disability in this case.  A claimant need not be "utterly incapacitated" to be eligible for disability

7   benefits.  *Smolen*, 80 F.3d at 1284 n.7.  In addition, the Ninth Circuit has "recognized that

8   disability claimants should not be penalized for attempting to lead normal lives in the face of

9   their limitations." *Reddick*, 157 F.3d at 722.   For these reasons, the ALJ erred by rejecting the

10  lay witness testimony of plaintiff's grandfather.

11         C.      Remand for Award of Benefits is the Appropriate Relief

12         The ALJ denied this claim at step two of the sequential evaluation process, and in doing

13  so, improperly rejected medical and testimonial evidence, including the opinion of plaintiff's

14  long-time treating psychiatrist Dr. Levine that plaintiff met the requirements for listing 12.03

15  for schizophrenic, paranoid and other psychotic disorders by late adolescence. *See* AR at 438-

16  40, 450 – 53; 20 C.F.R. pt. 404, subpt. P, app. 1. § 12.03.

17         The Court may direct an award of benefits where "the record has been fully developed

18  and further administrative proceedings would serve no useful purpose."  *McCartey v.*

19  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292).  The Ninth

20  Circuit has put forth a "test for determining when [improperly rejected] evidence should be

21  credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178

22  (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is

23  appropriate when:

24

REPORT AND RECOMMENDATION - 18

1

2     (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
      claimant's evidence; (2) there are no outstanding issues that must be resolved
      before a determination of disability can be made; and (3) it is clear from the
3     record that the ALJ would be required to find the claimant disabled if he
      considered the claimant's evidence.

4

5     *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

6            Defendant argues an award of benefits is not appropriate because the ALJ decided this

7     claim at step two of the sequential evaluation process.   Dkt. 14 at 11-12.   Therefore, defendant

8     contends this claim should be remanded to the Commissioner for completion of the five step

9     sequential evaluation process.   This Court disagrees.   Remand for further proceedings would

10    serve no useful purpose in this case.   No additional evidence related to the time period at issue

11    is available for development.   *See* AR at 54.   Furthermore, as noted by the ALJ, this "is not a

12    case lacking in opinion evidence from a treating source or medical expert."   AR at 34, 385,

13    438-53.   As discussed in greater detail previously, the medical and testimonial evidence is

14    consistent and, when credited, requires a finding that the severity of plaintiff's schizophrenia

15    met the severity of listing 12.03 no later than plaintiff's amended onset date of January 1,

16    1991, which is prior to plaintiff's 22nd birthday.   AR 48-60, 280-81, 385, 438-55.   As a result,

17    there are no outstanding issues that must be resolved before a determination of disability can

18    be made.   There is nothing to be gained by sending this matter back for a second hearing.

                                    VIII.   CONCLUSION
19
             For the foregoing reasons, the Court recommends that this case be REVERSED and
20
      REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for an
21
      award and calculation of benefits.   A proposed order accompanies this Report and
22
      Recommendation.
23

24

REPORT AND RECOMMENDATION - 19

1
2
3
4
5
6
7

     Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 31, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 7, 2014**.

8

     DATED this 17th day of October, 2014.

9
10
11

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

12
13
14
15
16
17
18
19
20
21
22
23
24

REPORT AND RECOMMENDATION - 20